3-23-0261 Dominic D. DeFoggio, Appellant versus Will County Division of Transportation, Village of New Lenox and Will County, Appalese. Boris, can you please pronounce your last name for me? Sure, Boris Samovalov and I'm here on behalf of the appellant. Mr. Samovalov, if you are ready to proceed. Yes, to start out, I want to address one issue up front. In our briefs, I cited to a case, Lave versus City of Chicago, which was a 2022 appellate case, which was overturned by the Supreme Court at the end of 2023. But aside from that, I don't think it affects any substantive issues in this case, but I did want to make that comment up front. In terms of the case, I want to go first through just the factual background. The accident at issue here happened on February 17, 2018. Dominic DeFoggio was driving north on Lincoln Way Road, also known as Schoolhouse Road. He lost control of his vehicle and he crashed into a southwest corner of a bridge over Hickory Creek in New Lenox Township. That corner was essentially an exposed sharp corner made out of concrete and it did not have a guardrail or any type of attenuating device. So that's really the focus of this case and the injuries that resulted to Mr. DeFoggio, we allege, were a result of lack of any attenuating device in that area. The bridge was reconstructed and the reconstruction was completed in April of 2007. And it's not disputed the plans for the bridge did not include a guardrail or attenuating device on that southwest corner. On January 3, 2019, Will County, who's the FLE, the defendant in this case, provided a response to a FOIA request wherein they indicated that they have assumed the duty to maintain and keep the bridge and surrounding areas in safe condition, which includes this southwest corner. We also, through the FOIA request, we received inspection reports, so the bridge was inspected multiple times over the years for safety, 2008, 2012, 2016, and even after the accident in 2020. After the case was filed against Will County, there was some motion practice. There were several parties named, including construction companies. Some of them were settled, some of them were dismissed without prejudice. A written discovery was completed and two depositions were completed. And those are of John Cairns, he's the head of County Transportation Maintenance Department. The key admissions that were made during the deposition of Mr. Cairns were the fact that when these inspections are, when the bridge inspections are being done, the inspectors do not bring any plans with them. They just come out and look out for safety issues. They make sure if there's an unsafe condition, then they address it. And there is a citation in our brief, but it's volume two, page 1429 of the record on appeal. He also admitted that the county had capacity to place attenuating devices or guardrails. They had multiple employees, I believe he cited 55 employees. They had equipment, they have various vehicles, and they also had mobile attenuating devices that could have easily been placed on that corner. And that's in volume two of the record on appeal, page 1424. The other individual that was deposed in this case is Brian, I believe his name is pronounced Geske, and he's the assistant county engineer, was one of the individuals knowledgeable about maintenance practices of the county. He indicated that there were guardrails on the corners, that the guardrails on the corners of the bridge have two purposes, to slow down traffic in the event there is a collision, to presumably minimize damage and injuries to the passengers of the colliding vehicle, and also to prevent rollover accidents from both directions of traffic. He indicated that the southwest corner had no attenuating device or guardrail, and there was nothing to protect northbound traffic in the event the vehicles lost control and collided with that part of the bridge. He also specifically talked about the northeast corner, so there's, so all of the corners again had guardrails, the northeast has a guardrail, and that one has an attenuating device, and again it has two purposes, to prevent rollover and also to minimize or slow down the impact. So the reason why I'm highlighting that is that if there's a vehicle traveling south and it loses control and crosses into the opposite side, it hit that corner with the guardrail and presumably not be as damaged as it would be without the guardrail. And the key admission here by Brian Genske was that installation of attenuating devices is a safety and a maintenance issue. They specifically admitted that that's part of maintenance obligations. Council, if I can interrupt, maintenance obligation? The question was, and I'll give you three, would installation of the device be a maintenance issue? Installation of a movable device was his first answer, and then secondly, installation of attenuating device, that would be a maintenance issue. That's the testimony, correct? Right, and they inspect the bridge for maintenance and safety, and they presumably address safety concerns when they see them. I mean, this is not the first time the county saw the bridge. They knew that it was built without an attenuating device since 2007. That's how it was engineered, correct? So the design did not have the attenuating device, but a maintenance is separate from the design. So just because the design doesn't have it, doesn't excuse our position, at least in this case, doesn't excuse the county's obligation when it has assumed safety and maintenance issues with respect to the bridge to put up a device. But maintenance doesn't mean redesign, does it? It doesn't mean redesign, no. But given that the maintenance, they stated that installation of guardrails is a maintenance issue, they can add it on regardless of whether it is part of the original design or not. At least that's our position. And so, and I think that really is the heart of the case. I think that's what was addressed in the Flynn case that we cite that's, I think both sides side to it. It's Flynn versus Town of Normal case, 2018 Appellate Fourth District decision. It pretty much covers all the key issues in this case, including the duty to maintain government, or in this case, county property in a safe condition, and whether that obligation applies to intended users. So first, the case, one of the factors, one of the things that specifically is stated in the case that's in page 60. Even though a design professional receives the protection of the statute of repose for design and installation related activities, it does not receive protection for other activities that are not within the purview of the statute, including activities related to a breach of a duty by one who undertakes inspection and maintenance duties. So given that there is an admission that this is a maintenance duty, and given the fact that they're inspecting the bridge for safety, this is our position is this is something that should have been picked up over the years and should have been addressed. It's in terms of whether Mr. Defogio was an intended and permitted user, and that's where we cited the Alave case, but really that issue was also addressed in Flynn because Flynn is a case also involving a bridge, and they called it the Camelback Bridge. It had a hump in the middle that created a dangerous condition. After the collision in that case, the driver of the vehicle got out and walked around, and then a third vehicle came along and pinned him between two cars. So the defendant, City of Normal, was arguing that he was not an user of the roadway because he got out of the vehicle and was essentially a pedestrian on a roadway. So in this case, our position is that Mr. Defogio was an intended and permitted user. He was a motorist operating a vehicle on the roadway. He was not even a pedestrian. He never got out of the vehicle, and there is no evidence that he was intentionally driving on the other side of the road. It's foreseeable that somebody could lose control of a vehicle on a curved road such as this and hit a corner of the bridge without an attenuating device. We cite multiple other cases aside from Alave in that case to support this position. The county also argued that they had no constructive notice or any notice, and I think the main argument behind that is that nobody previously has crashed on that corner, or at least there are no reported accidents, but the case law that we cite, including Burke versus Grillo, not only there is actual notice, but also constructive notice if a condition existed long enough, it should have been noticed, especially with all the inspections, at least three inspections before the accident in this case. The other argument that the county makes is under section 103 of the Tort Immunity Act. They argue that they had no duty to undertake an improvement to the bridge, but the case law, including Furman versus Will Township, stands for the proposition if there is an unreasonably dangerous condition, it has to be fixed. In their appellate response brief for the first time, they also reference section 105 of the Tort Immunity Act, which was never raised before, but regardless, that section provides that a government body doesn't have to update its premises to meet the current standards. This case is not about competing standards. The condition was a dangerous condition from the get-go, and so it's not even applicable in this case. Finally, they raise a proximate cause argument for the first time on appeal, and a similar argument was also raised in Flint. Essentially, what the court looked at is foreseeability. Was it foreseeable that a condition is dangerous? I think it's at a minimum a question of fact and a motion for summary judgment whether this concrete abutment without any guardrails could have at a minimum contributed to the injuries that were caused in this case. I believe that covers all of the key arguments in our case, and if I may answer any questions. Justice, do you have any questions? No. All right. Ms. Rankin. Thank you. Justices, counsel, may it please the court. My name is Toni Rankin. I'm with the Will County State's Attorney's Office. I represent the appellee, the defendants, the county of Will. So the question before your honors is whether the trial court properly granted the county's motion for summary judgment. As counsel stated on February 17th, 2018, the plaintiff was involved in a single-vehicle car crash. He was driving during a snow event on a two-lane road in New Lenox. He lost control of his vehicle and slid across the roadway into the opposing southbound lane of traffic in violation of the motor vehicle code and collided with a concrete abutment, causing his injuries. Now, as indicated in 2007, the Illinois Department of Transportation approved a design plan constructing this bridge and including three guardrails and a railroad access point on the southbound section in the opposing direction of traffic, the area of the collision. Now, the plaintiff throughout this has made various arguments, and their most current argument is that the county failed to maintain the roadway in a safe manner by not adding an attenuation device, which was not called for in the design, and if added, would block the access point on the southbound area. They claim that this is some sort of maintenance issue, that we have some sort of obligation to maintain the in a greater position than what the design originally called for. But a duty to maintain is not a duty to improve. In O'Brien v. The City of Chicago, it was stated that municipalities are not liable for failure to make improvements. The county has no obligation to improve. In Mark Twain, Illinois Bank v. Clinton, it states that a public entity's duty to maintain its public property does not extend to improvements. We are not required to improve the roadway. Now, counsel spent a good amount of time talking about Flynn v. The Town of Normal. Flynn is a bit distinguished from this case because in Flynn, the court determined that the city had an obligation to maintain a speed limit sign and a traffic circle, which were already in existence. The court is not stating that they needed to add these items or improve upon these items. They already existed. The court said that the negligence performance of a ministerial duty of care to maintain their safe speed limit signage and to maintain the existence of the traffic circle, all of which were already in existence. Now, he stated about the county bridge had no approach guardrail due to an access road for the railroad facility, which was part of the original design that was approved by the Illinois Department of Transportation more than 10 years prior to the accident. The existing guardrails, which were there, were maintained. There is no evidence in the record presented by the plaintiff from experts that the railroad as designed wasn't maintained. There's no expert testimony that a fourth guard rail would have lessened the plaintiff in injuries. There is no issue of fact here. Additionally, under 745 ILCS 10-3105B, a local public entity is not liable for an injury caused by a failure to upgrade any existing street. As indicated under the Local Government Toward Immunity Act, a local government entity has a duty to maintain its property only for the people who are intended and permitted users. The plaintiff was not an intended user of the roadway as the actions of the plaintiff operating a vehicle on the incorrect side of the road were in contradiction of the way the road was intended to be used. It is clear under the law that a municipality will not be held liable for the injuries of those who use a street in a way that it is not intended. Mr. Rankin, guardrails are to protect those that can't keep their vehicles on the roadway, correct? Guardrails can be used for many purposes, and yes, for many instances it is to protect the individuals. However, in this case we were unable to place a guardrail on that side as the design indicated because of that railroad access point. I'm speaking to your issue of an intended user. The guardrails are for people whose cars don't stay on the road. That is correct. Thank you. Additionally, the plaintiff claims that the county had notice, constructive or actual notice as to a maintenance issue. But how can the county be on notice to maintain a thing that they weren't required to have? They didn't fail to maintain it. It never existed. They didn't fail to replace it. It was never there. This is not an instance where the guardrail was damaged and we just never fixed it. It was never required to be there under the design, a design that was put in place more than 10 years ago, which would then capture the statute of repose for any design arguments. Counsel, was it the attenuating device on the other portions of the guardrail? There were guardrails on the other three corners of the bridge, but not on the portion of the bridge in which the plaintiff intersected, which was on the opposite lane of traffic. So when you said the guardrail, you meant the attenuating device was on the other three corners? The attenuating device that they speak of is a guardrail. So the guardrail is what is meant for the attenuation. Okay, thank you. The plaintiff also fails to establish that the defendant's lack of act is what was the proximate cause of their accident. The plaintiff still must be able to show that the defendant's actions caused the injury to the plaintiff. The cause of the injury to the plaintiff was that he lost control of his vehicle. There is no evidence in the record that an attenuation device or a guardrail on that section of the road would have lessened the injury. The record is void of any expert or any testimony that this case would have resulted in anything different than what happened. Plaintiff counsel speaks to foreseeability, but there's no evidence that it was just magically foreseeable that this would have resulted in a different injury. The there was some sort of proximate cause. There was no expert testimony in this case, correct? That's correct. Thank you. So as shown in the record, the plaintiff shifted their arguments numerous times. First, they say it's a design problem. Well, that argument fails because of the statute of repose. Then they say, well, the county failed to de-ice. Well, that argument failed because of the natural accumulation of ice and torrid immunity. Now they're saying, well, we had a failure to maintain. But how can the county be liable to maintain a thing that they never were required to have in existence to begin with? The statutory law and the cases are clear. The county has no duty to improve roadways. No evidence, there's no evidence in the record that the roadway was not maintained as it was designed, and their claims should be barred at law. The lower court correctly found in favor of the county for the motion for summary judgment. So for the reasons provided in the brief and the discussions that we had here today, the county will ask that this court upholds the trial court's proper granting of the county's motion for summary judgment. I'm happy to answer any questions. Thank you, Ms. Rankin. Any questions? No. Thank you. All right. Mr. Stemelove, counsel, you have five minutes to respond. Thank you, your honors. So in terms of the approximate cause and expert testimony, so when the motion was filed, we were still at fact discovery stage, and there was no argument in the motion for summary judgment pertaining to approximate cause. The burden is on the moving party to establish that there is no question of fact. So this was not even an issue. I understand they have greater leeway on an appeal, but it was not even an issue on the record that could have been addressed at that point. But in any event, the attenuating device, the purpose is to protect the people on the roadway, as counsel admitted. And there is a question of fact as to whether the injury was caused by lack of attenuating device. And I think the other big issue is whether the fact that an attenuating device was not in the design, or it could have been made a part of the design, it does not necessarily take it out of the realm of being a maintenance issue. And that was admitted by the individuals charged with maintenance on behalf of the county. They admitted that it was a maintenance issue, and they could have installed it in this case. And again, going back to the arguments under the Tourism Immunity Act, and specifically the section 105, again, that deals with updating to the existing standards. And this case has nothing to do with the standards that existed at the time of construction, or that changed. It has always been a dangerous condition that the county could have addressed from the get-go. And then in terms of the railroad access claim, one of the defense witnesses was specifically asked, what are you basing on this argument that an attenuating device couldn't have been installed because of the railroad access? And he had no basis for that at all. There was nothing, in fact, argued in any of the briefs by the county about what exactly about this access point prevented them from putting an attenuating device there. And I'm happy to answer any other questions, but I think we've covered all of the main points here. Thank you, Council. Questions? None. All right, Council, thank you very much for your arguments. We will issue a written decision after, actually, in the near future.